UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRY CARLTON CLARDY,

                 Plaintiff,                         Case No. 12-11114

v.                                          Hon. Paul D. Borman
                                          Mag. Judge Laurie J. Michelson

DAVID BICIGO,

                 Defendant,

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. 3],
AND TO DENY PLAINTIFF'S MOTION FOR DISCOVERY [DKT. 16]**

On November 17, 2009, prisoner Barry Carlton Clardy filed a *pro se* civil rights complaint,

pursuant to 42 U.S.C. § 1983, alleging that Defendant David Bicigo, a laboratory manager employed

by the Michigan State Police Forensic Division, planted Plaintiff's DNA on evidence prior to testing

by another laboratory. *Clardy v. Bicigo* (*Bicigo I*), No. 09-14487 (E.D. Mich.) (Dkt. 1, Compl.).

On November 30, 2009, District Judge Robert H. Cleland summarily dismissed the complaint

"because [Plaintiff] challenge[d] his continued imprisonment, which fails to state a claim upon

which relief may be granted under 42 U.S.C. § 1983." *Bicigo I*, (Dkt. 4, Op. & Order of Summ.

Dismissal). Several years later, on January 26, 2012, Clardy filed this virtually-identical lawsuit

again alleging that Bicigo violated his constitutional rights by planting Plaintiff's DNA on evidence.

(Dkts. 1, 13.) All pretrial matters have been referred to this Court. (Dkt. 4.) Presently before the

Court is Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. (Dkt. 3.)

The Motion has been fully briefed and the Court determines that a hearing is not necessary. *See*

E.D. Mich. LR 7.1(f)(2). For the reasons set forth below, the Court **RECOMMENDS** that

Defendant's Motion be **GRANTED**.

## I.      BACKGROUND

### A.      State Court History

On September 20, 1990, a jury convicted Plaintiff Barry Carlton Clardy ("Plaintiff" or "Clardy") of criminal sexual conduct ("CSC") involving the five year old daughter of his neighbor. (Mot. for Summ J., Ex. A and Ex. E at 1.)  The conviction was affirmed by the Michigan Court of Appeals, and the Supreme Court subsequently denied leave to appeal.  (*Id*., Ex. B and Ex. E at 1.) Years later, Clardy filed numerous motions for relief from judgment pursuant to Mich. Ct. R. 6.500 which were denied by the Michigan courts.  (*Id*.)  Clardy also sought habeas relief in federal court which was likewise denied.  (*Id*.)

In approximately 2005, the Innocence Project began seeking post-conviction DNA testing on the biological evidence from Plaintiff's CSC offense.  On September 24, 2007, the Innocence Project wrote to Defendant David Bicigo ("Defendant" or "Bicigo"), the Forensic Science Manager at the Department of State Police, Bridgeport Forensic Science Laboratory.  (Mot. for Summ. J., Ex. C.).  The letter thanked Bicigo for locating the biological evidence in the case against Clardy and reiterated the importance of preserving it until the Innocence Project was able to move for post-conviction testing.  (*Id*.)  The Innocence Project asked Bicigo to send an itemized list confirming all of the evidence under the custody of the Michigan State Police Bridgeport Laboratory.  (*Id*.)

On October 10, 2007, Bicigo responded to the Innocence Project's request.  He explained that the Bridgeport Laboratory's biological sample storage contained the known blood samples from Clardy and the victim as well as two vaginal swabs.  (Dkt. 1, Ex. A, Compl. at Ex. 1.)  Bicigo advised, "I will maintain these samples here at the laboratory until it is determined if they need to be sent for DNA analysis."  (*Id*.)

Clardy filed a motion for DNA testing on January 10, 2008 in the Genesee County Circuit Court.  (Mot. for Summ. J., Ex. E at 1.)  A few days later, on January 14, 2008, Bicigo prepared a Laboratory Report ("January 2008 Report") that appears to be the primary basis for Plaintiff's lawsuit.  (Compl., Ex. 6.)  The January 2008 Report indicates that on January 11, 2008, Bicigo received the following evidence, Item #1a:

> One manilla envelope containing vaginal sample removed from the laboratory freezer, and one manilla envelope containing the known blood samples from Barry Clardy and [the victim] removed from laboratory room temperature storage.

(*Id.*)  The section of the Report titled "Results" states that "[t]he requested examination was terminated at the request of [Mount Morris Police Department Investigator] Dennis McDemitt on 1/14/08.  Item 1a will be returned to agency."  (*Id.*)

Months later, on October 14, 2008, the Genesee County Circuit Court issued an Order granting Clardy's motion for DNA testing and directing the Bridgeport Laboratory to release to the Orchid Cellmark Laboratory the two vaginal swabs collected in 1990 from the victim as well as her blood sample and any other evidence collected in relation to the trial and conviction of Clardy.  (Mot. for Summ. J., Ex. D.)  The Order further provided that the DNA  analysis would proceed in two stages.  Orchid Cellmark would first conduct DNA analysis of the vaginal swabs and blood sample of the victim and publish the results in a report.  (*Id.*)  If Orchid Cellmark obtained a male genetic profile from the vaginal swabs, the second stage would involve collecting a new buccal swab from Clardy and conducting the appropriate DNA analysis of his reference sample.  (*Id.*)

On November 10, 2008, Orchid Cellmark issued a Report of Laboratory Examination regarding the stage-one analysis.  (*Id*. at Ex. F.)  The Report concluded:

> The partial Y-STR profile obtained from the vaginal swab is a

3

> mixture consistent with originating from two males.  Comparison of
> the reference sample(s) will be made upon request.

(*Id*.)  On November 25, 2008, after receiving the buccal swabs from Clardy, Orchid Cellmark issued

a Supplemental Report of Laboratory Examination.  (*Id*.)  This Report concluded:

> The partial Y-STR profile obtained from the vaginal swab is a
> mixture consistent with originating from two males.  Barry Carlton
> Clardy . . . cannot be excluded as the predominant contributor to this
> mixture.

(*Id*.)[1]  These Reports were sent to the Innocence Project.  (*Id*.)  Plaintiff acknowledges that he

received the results of the testing from his counsel in late November 2008. (Dkt. 21, Pl.'s Supp. Br.

at 1.)

Plaintiff contends that in January 2009 he received from the Bridgeport Crime Lab the

January 2008 Report indicating Bicigo received the vaginal swab and blood samples.  (*Id*.)  It was

then that Plaintiff says he knew Bicigo planted his DNA on the biological evidence.  (*Id*.)  Thus, on

March 12, 2009, Plaintiff filed a motion for relief from judgment in the Genesee County Circuit

---

[1] The Bridgeport Laboratory also did testing in 1990.  The results of that examination were:

> Previous testing on evidence submitted demonstrate the presence of
> amylase (an enzyme found in great quantity in saliva) and blood
> group secretions of type A&H substances on the vaginal swab, rectal
> swab and panties.

> Since the victim . . . and the suspect, Barry Clardy, are both group A
> secretors, secreting A&H substances in their body fluids, Barry
> Clardy cannot be eliminated as a possible source of the amylase
> recovered.

(Mot. for Summ. J., Ex. G, 1990 Report.)  Lab technician Bob Avery testified about these results
at Plaintiff's trial.  (*Id*., Ex. H.)

4

Court seeking a new trial based on this alleged newly discovered evidence.  (*Id*., Ex. I.)  In his

motion, Clardy argued that the his criminal case involved only one perpetrator, yet two male profiles

were found on the swab.  Clardy concluded that the Bridgeport Lab therefore planted his DNA on

the swabs – and that this was confirmed by the fact that Bicigo removed the evidence about nine

months before the state court ordered DNA testing.  (*Id*.)  In other words, Clardy contended that

there was no reason for Bicigo to remove the biological evidence in January 2008 other than to

tamper with it.  Bicigo has not provided any explanation for the January 2008 Report.

On March 23, 2009, the state court rejected Clardy's motion because Michigan Court Rule

6.502(G)(1) permits "one and only one motion for relief from judgment . . . with regard to a

conviction" and Clardy had already filed several motions for relief from judgment.  (*Id*. at Ex. J.)

The court further explained:

> [Clardy] now files this motion for relief under newly discovered
> evidence pursuant to MCR 6.502(G)(2). However, [Clardy's] motion
> does not set forth any newly discovered evidence that was not
> discovered before the previously mentioned motions for relief from
> judgment.

(*Id*.)  As a result, the court returned the motion to Clardy without filing.  *Id*.  Clardy then converted

his motion for relief from judgment into a petition for writ of habeas corpus.  (*Id*. at Ex. K.)  This

request was dismissed without prejudice on September 17, 2009 because it was filed in the wrong

court – it was not filed in the county where Clardy was detained.  (*Id*. at Ex. L.)

Undeterred, on September 24, 2009, Clardy recast his motion for relief from judgment as a

motion to remand for an evidentiary hearing on his claim of ineffective assistance of counsel.  (*Id*.

at Ex. M.)  He argued, "If counsel would have done her job before trial, Defendant would not have

been found guilty, and this second Lab worker would not have been able to tamper with and plant

5

evidence." (*Id*. at 2.)  This motion was also rejected by the state circuit court and returned without

filing on January 8, 2010, as being an improper successive motion for relief from judgment.  (*Id*. at

Ex. N.)  Clardy's motion for reconsideration was denied.  (*Id*. at Ex.O.)  He then filed an Application

for Leave to Appeal in which he argued that a retroactive change in Michigan law regarding lesser

included offense instructions entitled him to a new trial.  (*Id*. at Ex. P.)  In late 2010, both the

Michigan Court of Appeals and Supreme Court denied the Application as being a successive motion

for relief from judgment prohibited by Mich. Ct. R. 6.502(G).  (*Id*. at Exs. Q, R.)

## B.    Federal Court History

On November 17, 2009, prior to the conclusion of his attempted state-court appeal, Plaintiff

filed *Bicigo I* based on Bicigo's alleged evidence tampering.  *See Bicigo I*, (Dkt. 1, Compl.).  District

Judge Robert H. Cleland summarily dismissed the matter as follows:

> Plaintiff's complaint is subject to dismissal because he challenges his
> continued imprisonment, which fails to state a claim upon which
> relief may be granted under 42 U.S.C. § 1983.  A claim under § 1983
> is an appropriate remedy for a state prisoner challenging a condition
> of his imprisonment, *see Preiser v. Rodriguez*, 411 U.S. 475, 499
> (1973), not the validity of his continued confinement.  *See Heck v.
> Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that a state prisoner
> does not state a cognizable civil rights claim challenging his
> imprisonment if a ruling on his claim would necessarily render his
> continuing confinement invalid, until and unless the reason for his
> continued confinement has been reversed on direct appeal, expunged
> by executive order, declared invalid by a state tribunal, or has been
> called into question by a federal court's issuance or a writ of habeas
> corpus under 28 U.S.C. § 2254).  This holds true regardless of the
> relief sought by the plaintiff.  *Id*. at 487-89.
>
> *Heck* and other Supreme Court cases, when "taken together, indicate
> that a state prisoner's § 1983 action is barred (absent prior
> invalidation) – no matter the relief sought (damages or equitable
> relief), no matter the target of the prisoner's suit (state conduct
> leading to conviction or internal prison proceedings) – *if* success in
> that action would necessarily demonstrate the invalidity of

confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Plaintiff appears to be arguing that the Defendant planted DNA evidence "to cover up the fact that another laboratory worker had filed false reports." (Compl. 3.) On that basis, Plaintiff contends he has been incarcerated in violation of his constitutional rights.

Considering Plaintiff's statement of facts as stated, the court concludes that he is challenging the validity of his continued confinement. Plaintiff has thus failed to state any claim upon which relief may be granted under 42 U.S.C. § 1983; his claim is barred by *Heck* and must be dismissed.

(*Id.* at Dkt. 4.)

Clardy did not appeal this dismissal. Instead, this suit ensued. On January 26, 2012, Clardy filed a six-paragraph Complaint in Genesee County Circuit Court against Bicigo alleging similar facts as in *Bicigo I*:

1.   In October 2007, Defendant was informed that the evidence in case No: 40135-90 was going to be sent to another Lab for testing. Defendant agreed to hold the evidence until the Court decided were [sic] the evidence was to be tested.

2.   On January 14, 2008, Defendant took out the evidence that he did not have a Court Order to do, and he started tampering with said evidence, in doing so he planted the DNA of Plaintiff on the evidence. *Smith v. Springer*, 859 F.2d 31 (7th Cir. 1988).

3.   Defendant has violated Plaintiff's Fourteenth Amendment rights when he planted this said evidence.

4.   Defendant did this act willfully, and was working under the color of the law at the time, and had violated Plaintiff's Due Process rights under the Fourteenth Amendment, and Defendant has violated 18 U.S.C. §241, §242.

5.   Once Defendant planted said evidence[,] he then turned the evidence over to Investigator Dennis McDermit from the Mount Morris City Police Department.

> 6.    Defendant had no right to do anything what so ever [sic] with this evidence, and when he did he violated the Law, and Plaintiff's rights.

(Dkt. 1, Notice of Removal, Ex. A, Compl.)  Plaintiff summarizes his suit as follows:

> Plaintiff alleges that Defendant Bicigo planted Plaintiff's DNA on evidence prior to sending the evidence to an outside laboratory for testing.  It is plain to see.  Defendant was to hold this evidence until it was decided who would do the testing, but before that decision was made Defendant had the evidence out testing on it himself, Plaintiff's DNA was not there before but it was after Defendant Bicigo was done testing.  Defendant was testing something he had no right touching.

(Dkt. 7, Resp. to Mot. Summ. J. at 2.)  Plaintiff also attached to his complaint a "brief in support" which is identical to the supporting brief he filed in *Bicigo I*.  Defendant subsequently removed the case to this court on March 13, 2012.  (*Id.*)

On March 19, 2012, Defendant filed the present Motion to Dismiss or, in the alternative, for Summary Judgment.  (Dkt. 3., Mot. Summ. J.)  Defendant's Motion attaches numerous materials outside the complaint.  Defendant contends that Plaintiff's section 1983 claims are barred by *Heck,* res judicata, collateral estoppel, and the statute of limitations.  (*Id.*)  Defendant also contends that Plaintiff's claim of planted evidence is contradicted by the documents attached to the Complaint.  (*Id.*)  Lastly, Defendant contends that there is no private right of action under 18 U.S.C. §§ 241 and 242 and thus, those claims should also be dismissed as matter of law.  (*Id.*)  Plaintiff filed a Response  (Dkt. 7) and the Court also asked for supplemental briefing on the issue of the statute of limitations (Dkt. 12).  Neither party has provided any testimony, either by way of deposition or affidavit, that addresses the merits of Plaintiff's claim of evidence tampering.  The Court finds, however, that Judge Cleland's dismissal of *Bicigo I* and the statute of limitations preclude Plaintiff from bringing this second, identical lawsuit.

8

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss under Fed. R. Civ. P.  12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but the Court "need not accept as true legal conclusions or unwarranted factual inferences."  *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard is not a "probability requirement," but it does require "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*[2]

Turning to Defendant's alternative request for relief, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material only if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.

---

[2] The Court is also mindful that "[a] *pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001). The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

## III.   ANALYSIS

### A.   Collateral Estoppel Bars Relitigation Of The *Heck* Issue

Because Judge Cleland *sua sponte* dismissed *Bicigo I* pursuant to the Prison Litigation Reform Act, it was never served on Defendant. Defendant only learned about that case when Plaintiff challenged removal. In his Response to Plaintiff's Motion for Remand, Defendant "urge[d] the Court to consider Judge Cleland's Order of Summary Dismissal as an additional basis for the *res judicata* and collateral estoppel arguments already raised in Defendant's Motion to Dismiss." (Dkt. 10 at 2.) While neither party briefed this potentially dispositive issue, the Court has undertaken its own analysis.

As provided, Judge Cleland dismissed Plaintiff's prior § 1983 complaint under *Heck*; such dismissals are without prejudice. *See Diehl v. Nelson*, 198 F.3d 244, 1999 WL 1045076 (6th Cir.

1999) (citing *Fottler v. United States*, 73 F. 3d 1064, 1065 (10th Cir. 1996) ("When a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice.")); *Maddox-El v. Salazar*, No. 12-10526, 2012 U.S. Dist. LEXIS 28437, at *3-4 (E.D. Mich. Mar. 5, 2012) ("When  a prisoner's civil rights claim is barred by the *Heck v. Humphrey* doctrine, the appropriate course for a federal district court is to dismiss the claim for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3), rather than to dismiss the complaint with prejudice as being frivolous, because the former course of action is not an adjudication on the merits and would allow the prisoner to reassert his claims if his conviction or sentence is latter invalidated.").

Under the doctrine of res judicata or claim preclusion, a final judgment on the merits bars all claims by the parties based on the same cause of action, as to every matter actually litigated and every theory that could have been presented.  *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995).  But a dismissal without prejudice is generally not an adjudication on the merits and thus does not have a res judicata effect.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990); *but see Williams v. Van Buren Twp.*, No. 06-12869, 2006 U.S. Dist. LEXIS 66063, at *4 (E.D. Mich. Sept. 15, 2006) (finding that "since issuing its Order of Summary Dismissal, the court has learned that Plaintiff previously filed a § 1983 civil rights complaint in the United States District Court for the Western District of Michigan in which he raised the same claims against the same defendants named in this complaint. The district court dismissed the complaint utilizing the *Heck* analysis . . .  Thus, under the doctrine of *res judicata*, Plaintiff is precluded from relitigating these claims." (citations omitted)); *Lester v. Greenville County of Court House*, No. 12-1318, 2012 U.S. Dist. LEXIS 98465 (June 7, 2012) *report and recommendation adopted by* 2012 U.S. Dist. LEXIS 95584 (D.S.C. July 11, 2012) ("Plaintiff may not be precluded from pursuing this duplicative § 1983 action against

11

Defendant by the doctrine of *res judicata*, because his previous case was summarily dismissed *without prejudice*. However, as the Fifth Circuit Court of Appeals [has] stated . . . 'The District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time. Once was sufficient.'").

While claim preclusion may not bar the present suit, Plaintiff has not alleged that anything material to the application of *Heck*'s delayed-accrual rule in this case is different from *Bicigo I*. This implicates collateral estoppel or issue preclusion. Issue preclusion "generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). Issue preclusion bars relitigation of an issue when: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding. *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace and Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996).

In the context of *Heck*, one court persuasively explained that issue preclusion barred relitigation of the applicability of the delayed-accrual rule:

> "For preclusion purposes, it does not matter that the dismissal was 'without prejudice' and not on the merits of the underlying claims [where] the issue that led to dismissal was adjudicated on *its* merits and was conclusively determined." *Offshore Sportswear, Inc. v. Vuarnet Intern.*, B.V., 114 F.3d 848, 851 (9th Cir. 1997); *see Link v. Pile Drivers Union Local 34*, No. 10-16899, 2012 U.S. App. LEXIS 758, 2012 WL 76888, at *1 (9th Cir. 2012) (where Plaintiff had previously litigated the issue of whether he had failed to exhaust his

intra-union remedies, Court found that he was barred on collateral estoppel grounds from relitigating that issue, even though the merits of his underlying claims were left undecided); *see also* 18 C. Wright, A. Miller & E. Cooper, et al., *Federal Practice & Procedure* § 4402 (2nd ed., database updated April 2012) ("Relitigation of a suit for want of federal subject-matter jurisdiction, for example, should not bar an action on the same claim in a court that does have subject matter jurisdiction, but ordinarily should preclude relitigation of the same issue of subject-matter jurisdiction in a second federal suit on the same claim")

\* \* \*

In his October 21, 2011 Order, [District] Judge Martone found that Plaintiffs' section 1983 claims had not yet accrued under *Heck* . . . . The only factual difference in the case currently before the Court and the case that was before Judge Martone is that Plaintiffs' appeal to the Arizona Court of Appeals has now concluded. This factual difference does nothing to effect the *Heck* bar to Plaintiffs' claims.

\* \* \*

This Court has no authority to collaterally review the decisions of another Judge within the Court. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981) ("an erroneous conclusion reached by the court in the first suit does not deprive the defendants in the second action of their right to rely upon the plea of *res judicata*. A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause of action.") (internal quotation and citation omitted). There is no question that when a District Court dismisses a case based on *Heck*, Plaintiffs are able to seek appellate review of the District Court's decision. *See, e.g., Beets v. County of Los Angeles*, 669 F.3d 1038 (9th Cir. 2012). This Court cannot sit as an appellate Court merely because Plaintiffs have not properly exercised their right to appeal [the District Judge's] prior Order finding that *Heck* applied to their section 1983 claims.

Because nothing has changed in Plaintiffs' case that would affect the *Heck* bar, Plaintiffs are barred from relitigating this issue before this Court by collateral estoppel.

*Salman v. City of Phoenix*, No. 12-1219, 2012 U.S. Dist. LEXIS 83305, \*16-17 (D. Ariz. June 12,

13

2012).

The reasoning of *Salman* applies in this case. Defendant asserts that *Heck* bars Plaintiff's Complaint. (Mot. to Dismiss at 4-6.) He claims that Plaintiff's allegations of planted DNA and false testimony used to convict him – if true – "unavoidably imply the invalidity of his conviction." (*Id*. at 4.) This is the very issue ruled upon by Judge Cleland in the prior lawsuit involving the same parties. Plaintiff had the opportunity to appeal *Bicigo I* to the Sixth Circuit but did not do so.

While this might seem to be the end of the matter, the Court notes that use of collateral estoppel "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Commissioner v. Sunnen*, 333 U.S. 591, 599-600 (1948). Therefore, even where, as here, the specified elements of collateral estoppel are present, reexamination of a legal issue is appropriate where there has been a change in the legal landscape after the decision claimed to have preclusive effect. Restatement (Second) of Judgments § 28 (cmt. c). "A judicial declaration intervening between . . . two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." *Sunnen*, 333 U.S. at 600; *see also Montana v. United States*, 440 U.S. 147, 155 (1979) (noting that the "appropriate application of collateral estoppel" may necessitate an inquiry as to whether "controlling facts or legal principles have changed significantly" since the first case); *Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir. 1987) (significant change in controlling law precludes application of collateral estoppel).

In 2011, after Judge Cleland's ruling, the United States Supreme Court granted certiorari in *Skinner v. Switzer*, 131 S. Ct. 1289 (2011) to decide the following question on which the Courts of Appeals had returned diverse responses: "May a convicted state prisoner seeking DNA testing of

14

crime-scene evidence assert that claim in a civil rights action under 42 U.S.C. § 1983, or is such a

claim cognizable in federal court only when asserted in a petition for a writ of habeas corpus under

28 U.S.C. § 2254?"  *Id*. at 1293.  After reiterating the *Heck* doctrine and summarizing its relevant

decisions applying *Heck*, the Supreme Court held,

> Measured against our prior holdings, Skinner has properly invoked
> § 1983.  Success in his suit for DNA testing would not "necessarily
> imply" the invalidity of his conviction.  While test results might
> prove exculpatory, that outcome is hardly inevitable; . . . results
> might prove inconclusive or they might further incriminate Skinner.

*Id*. at 1298.  *Skinner* certainly suggests, therefore, that a claim by Plaintiff that Bicigo tampered with

the DNA evidence before it was sent to Orchid Cellmark for DNA testing in violation of his due

process rights would not "necessarily imply" the invalidity of his conviction.  *See also Smith v.*

*Springer*, 859 F.2d 31, 33 (7th Cir. 1988) (explaining that plaintiff's "lawsuit seeks monetary

damages from the police officers who allegedly fabricated [DNA] evidence which led to his [rape]

conviction.  His section 1983 claim challenges the legality of the conduct of the officers and does

not impugn the integrity of the state judicial system.  Although the correctness of [plaintiff's]

conviction may be seriously undermined if he succeeds on his claim, he does not seek this result

directly.").  In other words, if success in a suit for DNA testing would not necessarily imply the

invalidity of a conviction, success in a suit challenging conduct impacting the DNA testing would

not necessarily imply the invalidity of a conviction.  It might, or might not, result in new testing that

might, or might not, prove exculpatory.

But Judge Cleland framed the issue differently.  He believed Plaintiff's claim was that

"Defendant planted DNA evidence 'to cover up the fact that another laboratory worker had filed

false reports.' (Compl. 3.)  On that basis, Plaintiff contends he has been incarcerated in violation

of his constitutional rights." (*Bicigo I*, Dkt. 4 at 3.)  Given this framing of Plaintiff's complaint in *Bicigo I*, issue preclusion in this case does not turn on whether *Skinner* changed the legal landscape. Because Judge Cleland perceived an incarceration challenge, he correctly applied *Heck*.  While Plaintiff – and even this Court – might have a different interpretation of his section 1983 claim in *Bicigo I*, the proper legal recourse to Judge Cleland's framing of the cause-of-action was an appeal to the Sixth Circuit.  The change-in-legal-landscape exception therefore does not lift the issue preclusion bar in this case.

Accordingly, "Because nothing has changed in Plaintiff['s] case that would affect the *Heck* bar [as applied in the prior case], Plaintiff [is] barred from relitigating this issue before this Court by collateral estoppel." *Salman*, 2012 U.S. Dist. LEXIS 83305 at *17.  The Court recognizes, however, that the parties did not brief this issue and that it presents a close question.  Thus, the Court will also address Defendant's statute of limitations argument because that provides an alternative basis for dismissal as a matter of law.[3]

### B.    Plaintiff's § 1983 Claims Are Barred By The Statute of Limitations

According to Plaintiff, the alleged evidence tampering that forms the basis of his §1983 claim occurred in 2008.  He acknowledges that he "has been working on this same claim for four years now."  (Dkt. 7, Resp. to Mot. to Dismiss at 1.)  Thus, says Defendant, the claim is barred by the applicable 3-year statute of limitation.

Because the statute of limitations is an affirmative defense, a Defendant raising that shield has the burden of proof.  *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).

---

[3]    Because of these legal grounds warranting dismissal, the Court need not address Defendant's other res judicata and collateral estoppel arguments.

To prevail, Defendant must show: (1) that the statute of limitations has run, and (2) that no genuine issue of material fact exists as to when plaintiff's cause of action accrued. *Id.* If defendant carries his burden, the burden shifts to Plaintiff to establish an exception to the statute of limitations. *Id.*

The relevant statute, 42 U.S.C. § 1983, does not itself set a limitations period. Rather, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Drake v. City of Detroit, Michigan*, 266 F. App'x 444, 448 (6th Cir. 2008); *see also Owens v. Okure*, 488 U.S. 235, 240-41 (1989). For a § 1983 action arising in Michigan, such as this case, Michigan's three-year statute of limitations period for personal injury claims governs. *Id.* (citing Mich. Comp. Laws § 600.5805(10); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004)).

In determining when the limitations period starts, however, courts look to federal law. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). "Under federal law, as developed in this Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). Stated differently, "[i]n determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003). The Court must therefore look at when the harm in question occurred, guided by the principle that "[a] plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at 273.

Here, Plaintiff does not dispute that he received the results of the Orchid Cellmark DNA testing in November 2008. Plaintiff further acknowledges that this is when "he knew the evidence

17

had been tampered with." (Dkt. 23, Pl. Resp. to Supp. Br. at 1.) He claims, however, that he did not

know Bicigo was the person responsible for the tampering until some unidentified date in January

2009 – when he received the January 2008 Report. (*Id*; Dkt. 21, Pl. Supp. Br. at 1.) But Plaintiff

did not need to know the specific identify of the potential defendant to know he had a claim. *See*

*Staves v. City of L.A.,* No. 10-00967, 2010 U.S. Dist LEXIS 72824, *8 (June 15, 2010) *report and*

*recommendation adopted by* 2010 U.S. Dist. LEXIS 72828 (C.D. Cal. July 19, 2010) (finding that

"contrary to Plaintiff's contention, his claim accrued when he knew of both his injury and its cause,

not when he learned the identity of the individual defendants. The Ninth Circuit has consistently

found that a plaintiff need not know the identity of the person who caused his injury in order to

trigger the statute of limitations. *See Dyniewicz v. United States*, 742 F.2d 484, 486 (9th Cir. 1984)

('Discovery of the cause of one's injury, however, does not mean knowing who is responsible for

it.')"); *Bush v. Hutchenson*, No, 12-336, 2012 U.S. Dist. LEXIS 70101 *12-13, n.2 (W.D. Mich.

May 21, 2012) (noting that the statute of limitations barred plaintiff's section 1983 claims because

"Plaintiff's claim based on his 2005 treatment accrued at that time because he had reason to know

of the 'harms' done to him at the time they occurred. Plaintiff, however, did not file his complaint

until April 2012, well past Michigan's three-year limit.")[4]

     The record is undisputed that Plaintiff knew of his injury in November 2008. He did not file

this lawsuit in Genesee County Circuit Court until January 26, 2012 – beyond the three-year limit.

Thus, his § 1983 claims are barred by the statute of limitations. Moreover, Plaintiff has not carried

---

     [4] The record simply reflects that Plaintiff identified Bicigo as the responsible party in January
2009. He did not file this lawsuit until January 26, 2012. Thus, even if Plaintiff's claim did not
accrue until he discovered Bicigo's identity, his claim would still be barred if this occurred prior to
January 26, 2009.

his burden of showing that tolling is appropriate.  "To successfully raise a claim of equitable tolling, a party must show either fraudulent concealment of the critical facts that would lead one to know that he can sue, or a misrepresentation of those facts -- whether made in good faith or not -- that was calculated to induce a plaintiff to forego the right to sue."  *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991).  Plaintiff had all of the necessary facts.  He decided, however, to first raise the issue of evidence tampering in a motion challenging his conviction in state court.  As Plaintiff admits, "When the Circuit Judge went with the second successive 6.500 [motion] in 2011, Plaintiff decided at that time to file his Complaint in the Circuit Court, and the Circuit Clerk signed the Summons on January 26, 2012." (Supp. Br. at 2.)  Plaintiff erroneously believes that the statute of limitations does not begin to run until the state court denied his motion in 2011.  (Supp Br.; Resp. to Supp. Br.)  It is well established, however, that ignorance of the legal process does not warrant equitable tolling of a statute of limitations.  *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones,* 939 F.2d at 385.  Additionally, Plaintiff sued Bicigo in federal court for evidence tampering in November 2009.  There is simply no reason Plaintiff could not bring the present lawsuit before the statute of limitations expired in November 2011.

### C.    Plaintiff's Criminal Law Claims Should Be Dismissed

Plaintiff's complaint  also alleges violations of 18 U.S.C. §§ 241 and 242.  These criminal statutes do not provide for a private right of action.  *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (holding that the district court properly dismissed defendant's claim filed pursuant to 18 U.S.C. §§ 241 and 242 because he had no private right of action under either of those criminal statutes).  Thus, they should be dismissed as a matter of law.  *Id*.; *McNeal v. Blackwell-Hatcher*, No. 08-10588, 2009 U.S. Dist. LEXIS 6324, *8-9 (E.D. Mich. Jan. 29, 2009).

19

## IV.   CONCLUSION

For the foregoing reasons, this Court RECOMMENDS that Defendant's Motion to Dismiss (Dkt. 3) be **GRANTED.**   As a result, the Court further recommends that Plaintiff's Motion for Discovery (Dkt. 16) be **DENIED**.[5]

## V.   FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).   The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.   *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.   Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.   *See* E.D. Mich. LR 5.1.   A copy of any objections is to be served upon this magistrate judge but this does not constitute filing.   *See* E.D. Mich. LR 72.1(d)(2).   Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be

---

[5] The Court recognizes that it has the authority to decide non-dispositive motions such as Plaintiff's Motion for Discovery.  But the Court's reason for denying that motion is because the Court has recommended that the case be dismissed.  Thus, the Court has included its ruling on the non-dispositive discovery motion as part of this Report and Recommendation.

filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

S/Laurie J. Michelson
Laurie J. Michelson
United States Magistrate Judge

Dated: September 6, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on September 6, 2012.

s/Jane Johnson
Case Manager to
Magistrate Judge Laurie J. Michelson